**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TEMPLOY, INC., and** | ) | |
| **HARD HITTERS, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.: 08-689-KD-C** |
| | ) | |
| **NATIONAL COUNCIL ON** | ) | |
| **COMPENSATION INSURANCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's motion to dismiss or in the alternative for summary judgment and supplemental motion for summary judgment (Docs. 5, 6, 28, 29), Plaintiffs' responses thereto (Docs. 12, 34) and Defendant's replies (Docs. 14, 35); and Plaintiff's motion to amend the complaint (Doc. 30), Defendant's opposition (Doc. 32) and Plaintiffs' reply (Doc. 33). For the reasons set forth herein, the Defendant's motion for summary judgment (Doc. 5) is **GRANTED** and Defendant's supplemental motion summary judgment (Doc. 28) is **MOOT**. Plaintiffs' motion for leave to amend (Doc. 30) is **DENIED.**

**I.      Background**

**A.      Procedural**

This is the second action in the Southern District of Alabama brought by the Plaintiffs concerning Temploy, Inc.'s ("Temploy") participation in the Alabama Worker's Compensation Insurance Plan ("AWCIP"), the state-sponsored assigned-risk mechanism available to Alabama employers who cannot obtain workers' compensation insurance in the voluntary market.  In the first action, *Temploy, Inc. and Hard Hitters, Inc. v. Companion Property and Casualty Insurance Co.*,

CV 07-632-KD, ("the CPCI action"), the Plaintiffs sought damages due to Companion Property and Casualty Insurance Company's ("CPCI") allegedly negligent, wanton, and defamatory conduct and breach of contract, as it concerned the servicing and administration of a workers' compensation insurance policy obtained from the AWCIP in September 2002. The CPCI action was resolved in December 2008, after the Plaintiffs accepted Offers of Judgment tendered by CPCI. (Docs. 75, 76 (CV 07-632-KD)).

Subsequently, Plaintiffs filed the present action against Defendant National Council on Compensation Insurance, Inc. ("NCCI"), the administrator of the AWCIP and a non-profit licensed rating organization, alleging that NCCI should be held liable for not ensuring that CPCI abided by its obligations under the AWCIP, and asserting claims for negligence and wantonness regarding Temploy and defamation concerning Hard Hitters.[1]  (Doc. 1-2). On December 4, 2008, Defendant filed a responsive pleading by filing a Motion to Dismiss (or in the alternative motion for summary judgment (Docs. 5, 6)) in response to Plaintiffs' original Complaint. Plaintiff then responded to Defendant's motion to dismiss. (Doc. 12). On May 6, 2009, at a hearing before U.S. Magistrate Judge Cassady, the merits of Defendant's motion were argued by both parties; at no time did Plaintiffs assert that they intended to file an amended complaint.  At that hearing, Defendant notified Judge Cassady that it intended to supplement its motion to dismiss with an argument based on the satisfaction and discharge defense. Accordingly, the Court set forth a briefing schedule for such supplemental filing. (Doc. 27).  Judge Cassady also converted the motion to dismiss to a motion for Summary Judgment. (Id.)

---

[1]  Plaintiff's proposed amended complaint asserts claims for negligence and wantonness regarding Hard Hitters as well.

On May 29, 2009, Defendant filed a Supplemental Motion for Summary Judgment.  (Docs. 5, 6, 28, 29, 35).  On June 1, 2009 – *after Defendant had already filed both a motion to dismiss and motion for summary judgment* – Plaintiffs sought leave of Court to file an amended complaint. (Doc. 30).  Plaintiffs contend that the amendment is necessary to correct an "inadvertent omission" of claims for negligence and wantonness by Plaintiff Hard Hitters, Inc.: namely, to "make the acts of negligence and wantonness more clearly stated[]" because "[i]n the counts of Negligence and Wantonness [in the original Complaint] relief was requested by both Plaintiffs but in the allegations as to the acts of negligence and wantonness by the Defendant Hard Hitters was inadvertently omitted." (Id.)  Defendant objects to this amendment on the grounds of undue prejudice and futility. (Doc. 32).

B.    **Factual**[2]

This case arises out of a dispute stemming from an insurance contract between Plaintiff Temploy, Inc. ("Temploy") and non-party CPCI, through which CPCI contracted to provide Temploy with workers' compensation coverage for employees it leased to its clients, and then reported certain non-compliance information about Temploy, to the National Council on Compensation Insurance ("NCCI").  The NCCI subsequently provided to various entities this non-compliance information in response to inquires regarding Hard Hitters and Temploy.

Plaintiff Temploy is a temporary employment agency; Jessica Ulmer ("Ulmer") was the Vice-President (an employee), but not a shareholder.  Plaintiff Hard Hitters, Inc. ("Hard Hitters") is a temporary employment agency; Ulmer is the President and Owner.  Non-party CPCI was the

---

[2]  When ruling on a motion for summary judgment, the court views "the evidence and all reasonable inferences in the light most favorable to the non-moving party."  See, e.g., Battle v. Board of Regents for Ga., 468 F.3d 755, 759 (11th Cir. 2006).

servicing carrier for Temploy's workers' compensation coverage with NCCI in 2002 and 2003.

NCCI is the state-approved and designated administrator for the Alabama Workers' Compensation Insurance Plan ("AWCIP").[3]  (Doc. 1-2).  NCCI is responsible for filing with the Alabama Department of Insurance, on behalf of the assigned-risk pool, the proposed rates and procedures used to determine premiums.  (Id.)  NCCI also administers the rules and regulations of the AWCIP via its state-approved Basic Manual and supplemental rules, which govern every aspect of the AWCIP.  (Id.)[4]  The AWCIP contains detailed provisions authorizing the pool administrator to establish written performance requirements for servicing carriers regarding premium audit and collection, claims services, loss control and safety services, and resolution of complaints.  (Doc. 5-13 (Section V)).  See also Birmingham Hockey Club, Inc., 827 So.2d 73, 76 (Ala. 2002).

---

[3]  Employers in the State of Alabama are required by law to provide worker's compensation benefits to employees injured during the course of their employment. See Ala. Code §§ 25-5-8 and 25-5-50, et seq. (Doc. 1-2). Generally, employers purchase insurance in the voluntary market from an insurer who voluntarily agrees to underwrite the employer's risk, but when an employer is unable to obtain insurance in the voluntary market, the employer may obtain coverage in the "residual" or "assigned-risk" market. (Id.)  In Alabama, the state-created assigned-risk mechanism is known as the Alabama Workers Compensation Insurance Plan. (Id.)

[4]  Under the AWCIP, an employer is assigned an individual insurer, or servicing carrier, from which the employer purchases a workers' compensation insurance policy.  See, e.g., Birmingham Hockey Club, Inc. v. National Council on Compensation Insurance, 827 So.2d 73, 76 (Ala. 2002) (providing a detailed description of the AWCIP plan). The servicing carrier then will remit the premium payments it receives from the employer to the mechanism (or pool).  Id. When an injured employee makes a worker's compensation claim, the servicing carrier pays the claim and is then reimbursed from the pool by the pool-administrator for the loss payments made to the employee.  Id.  At the end of each quarter, any funds remaining in the pool are distributed equally among the servicing carriers forming the pool.  Id. Although the servicing carriers issue policies, collect premiums, and pay losses, each servicing carrier issues the same type of policy to every employer and may charge only those rates set by the insurance commissioner.  Id.  The amount of insurance premiums an employer must pay to the servicing carrier is determined by several variables, including the amount of remuneration the employer pays its employees during the policy period, the experience modification factor, and the employer's classification codes. Id. The experience modification factor is determined, in part, by the dollar amount of workers' compensation claims actually submitted by an employer over a certain period of time.  Birmingham Hockey Club, Inc., 827 So.2d at 76.  The experience modification factors, classification codes, and other factors are set by NCCI with the approval of the ADOI.

4

On or about August 20, 2002, Temploy applied for coverage under the AWCIP by submitting an application to NCCI.  On August 29, 2002, NCCI acknowledged to Temploy that coverage was effective September 1, 2002 and that CPCI was appointed as the servicing carrier.  Temploy then entered into an insurance contract with CPCI, for workers' compensation benefits for its temporary workers, and on September 10, 2002, CPCI issued a policy to Temploy, which was to be effective September 1, 2002 through September 1, 2003.  On May 2, 2003, Temploy's insurance policy was cancelled due to non-payment of premiums.

In early July 2003, CPCI retained Overland Solutions, Inc. (then known as CP Commercial Specialists), to perform an independent audit in order to determine the final premium due by Temploy.  Overland's auditor Jacqueline Ellis scheduled the audit of Temploy for July 24, 2003. Ellis concluded that Temploy was noncompliant with the audit, and on August 19, 2003, notified CPCI of the alleged noncompliance with a close out report.  On August 27, 2003, CPCI reported to NCCI Temploy's alleged noncompliance with the audit.  Plaintiffs dispute that they were non-compliant with the audit.

In April 2006, CPCI determined that Temploy owed $13,465.87 in premium payments. Temploy accepted the bill, and paid the balance effective March 6, 2007.

On March 6, 2007, Ulmer formed Hard Hitters[5] and attempted to obtain workers' compensation coverage for the company.  On April 2, 2007, NCCI analyst Kathy Dowdy faxed Able & Associates a "Final Notice" letter regarding its application for insurance for Hard Hitters, stating that additional information was required by April 4, 2007 in order to determine Hard Hitters'

---

[5] The corporate filing records that Plaintiffs submitted with their State Court Complaint show that Hard Hitters was initially formed on May 19, 2003 and dissolved on June 21, 2005.

eligibility for the Plan.  (Doc. 12-3 at 2).  Specifically, NCCI requested, in relevant part, the

following information:

REQUESTED INFORMATION

> 1a. We have found an entity that *Jessica Ulmer* had manage/owned in the past. *Temploy Inc* and this entity has an outstanding noncompliance issue with a prior carrier. According to Basic Manual Rule 4-A-3 and the Assigned\Risk Supplement, eligibility rules extend to any commonly manage[d] or owned interests.

> 1b COMPANION has advised us the related entity, *Temploy Inc*, has not complied with the terms of a prior policy. Coverage cannot be assigned until we receive confirmation from the carrier that this audit issue has been resolved. Please contact COMPANION at (800) 845-2724 X40005 OR X40006 and reference policy number WALO073894 to resolve.

(Id.)  A handwritten note on this letter states "She did comply with audit."  (Id.)  An undated

document created by insurance agent John Chambliss then states:

> Able Insurance tried to place workers compensation insurance for our client, Hard Hitters , LLC. We were denied a quote due to the following reason: 1a. We have found an entity that *Jessica Ulmer* had managed/owned in the past. *Temploy Inc.* and this entity has an outstanding noncompliance issue with a prior carrier.

(Id. at 3 (emphasis added)).

On April 5, 2007, Kathy Dowdy, underwriting analyst at NCCI, sent a letter/notice to Shelley

Nobles, an insurance agent at Able & Associates, in response to the application for insurance for

Hard Hitters, stating that coverage was being denied either due to outstanding debt or

noncompliance history, referencing Jessica Ulmer and noting that her company Temploy has an

outstanding noncompliance issue (audit issue) with CPCI.  (Doc. 12-3 at 1).

On December 7, 2007, NCCI generated a Residual Market Risk Profile[6] regarding Hard

---

[6] On the Profile, it states:

NOTICE TO ALL ASSIGNED CARRIERS:
By receipt of the above, the assigned carrier certifies that the information provided on the

Hitters, showing in the Final Review section an uncollectible and noncompliant history and that the prior policy history showed the business name was Temploy.  (Doc. 12-4).  This December 2007 document also shows the Application Diary for Hard Hitters from March 26, 2007 to April 5, 2007; the March 29, 2007 entry states that *Jessica Ulmer* was found to be part owner of *Temploy* under a FEIN number and that the prior history shows noncompliance for debt and therefore, "this risk is ineligible for coverage[,]" and on April 5, 2007, the application was rejected.  (Id. (emphasis added)).  The Prior Policy History of the Profile reveals the history for *Temploy*, showing that its policy was cancelled on 5/2/03 due to nonpayment of premium and on 12/1/02 due to nonpayment of premium.  (Id.)

Also on December 7, 2007, NCCI generated two Residual Market Risk Profiles regarding Temploy, for two distinct producers (Hardy Insurance Co. Inc. and Jason Schrimpsher), showing an uncollectible and noncompliant history for Temploy; the Profile for Scrimpsher noted in the Application Diary section that "[s]poke with Suzanne [Rich] at Companion on policy . . . for the audit information she stated that they are partial complied she is going to contact the auditor and call me back."  (Docs. 12-5, 12-6).

---

risk profile shall be used for the specific purpose of providing workers compensation insurance to this applicant pursuant to, and in accordance with the state Workers Compensation Insurance Plan requirements. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever, including but not limited to the accuracy of any information, product, or service furnished hereunder. The recipient of this material subscribes to and uses the information "as is" and is subject to any license agreement which governs the use of this information.

(Doc. 12-6 at 5).  CPCI is the Carrier in this case.

**II.**     **Conclusions of Law**

**A.**     **Relevant Law**

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[7]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations

---

[7] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).

omitted).  The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment.  <u>Lofton v. Secretary of Dep't of Children & Family Serv.</u>, 358 F.3d 804, 809 (11th Cir. 2004), <u>cert. den.</u>, 534 U.S. 1081 (2005).

**B.    Discussion**

      **1.    Negligence and Wantonness**[8]

In Counts One and Two of the Complaint, Temploy alleges that NCCI breached its duties to Temploy by negligently/wantonly "failing to comply with the requirements of the AWCIP," and that as a proximate consequence of this negligence/wantonness, Temploy was damaged in that it was unable to obtain workers' compensation insurance from a reputable carrier, had to search for long periods of time to obtain coverage through employee leasing companies, was required to pay excessive amounts for coverage and suffered loss of business income due to its failure to obtain proper insurance which eventually caused it to no longer be able to do business.  (Doc. 1-2 at 9-10).

Specifically, Temploy asserts that NCCI had the following duties and responsibilities: administering, managing and enforcing the Plan; requiring assigned carriers like CPCI to verify ongoing eligibility of employers under the Plan; requiring assigned carriers to complete final audits within the time frame specified by the Plan; requiring assigned carriers and employers to be in full

---

[8] Plaintiff Hard Hitters, through endeavoring to file an amended complaint, seeks to allege a claim for negligence/wantonness against NCCI.  The motion to amend comes after the close of discovery (May 26, 2009) and after two motions for summary judgment were filed.  Allowing an amendment at this stage of the litigation would prejudice the defendant because there would be no opportunity to file a dispositive motion on the new claim by Hard Hitters.  Moreover, because Hard Hitters was never a plan participant and Temploy was a plan participant, a different analysis would apply to Hard Hitters' claim of negligence.  Specifically, because CPCI did not provide insurance to, audit or report information on Hard Hitters, it is unlikely that Hard Hitters could show any duty owed to them by NCCI which arises out of the AWCIP.  Thus, Plaintiffs' motion to amend is **DENIED** as untimely and futile.

compliance with all terms and conditions of the policy contract; resolving and responding to complaints and inquiries from employers; monitoring the performance of assigned carriers and enforcing all performance requirements of the Plan; reviewing operation reports of assigned carriers; requiring and reviewing assigned carrier self audits; conducting on-site audits; reviewing any other information that relates to the assigned carrier; requiring the assigned carriers to comply with all applicable statutory and/or regulatory requirements including statutes , regulations, codes, rules, acts, directives, bulletins, announcements, circulars, etc.; requiring the assigned carriers to comply with all mandatory electronic processing and reporting requirements of NCCI; and taking remedial action including establishing and administering a progressive discipline program for an assigned carrier that fails to comply with the Plan and all statutes, rules, regulations and performance standards.  (Doc. 1-2 at 8-9).  <u>See</u> Doc. 12-8 (listing the duties and responsibilities of the plan administrator).

Defendant moves for summary judgment alleging that no duties arise under the AWCIP that inures to Temploy's benefit and therefore plaintiff has failed to show that NCCI owed any duty to Temploy.  Defendant also argues that Temploy's claim is barred by the statute of limitations.

In its response, Temploy asserts that employers and their employees are third-party beneficiaries to the agreement between the State of Alabama and NCCI through the AWCIP (*i.e.*, that as an employer Temploy is a third-party beneficiary to that agreement).  (Doc. 12 at 8-9). Temploy alleges that the duty owed by NCCI to Temploy is based on NCCI's contractual relationship with the State of Alabama through the Department of Insurance and the AWCIP.  (<u>Id</u>. at 8).  Moreover, Temploy alleges that NCCI, as Plan Administrator, "has a duty to the State of Alabama, the insurance companies in the assigned risk pool, and the employers who purchase

insurance through the assigned risk pool, to comply with all of the rules and regulations for which it is responsible." (Doc. 1-2 at 7).  Accordingly, Temploy's claims for negligence and wantonness, in sum, are claims against NCCI for negligently or wantonly failing to comply with the AWCIP requirements, resulting in a breach of duties to Temploy as a third-party beneficiary to that agreement.  As a matter of law, summary judgment is due to be granted in favor of NCCI as to Temploy's negligence/wantonness claims.

First, the claim that Temploy is a third-party beneficiary sounds in contract, not tort.  See, e.g., Cretcher Lynch & Co. v. National Council on Compensation Ins., Inc., 149 F.3d 817, 820-821 (8th Cir. 1998):

> Hatcher's claim . . .  as he has asserted it, is that NCCI was essentially negligent in failing to bind the coverage upon receipt of his application. The argument is made that under the terms and conditions of the Plan and Handbook, NCCI had a duty to provide coverage and failed to comply with that duty. Assuming that NCCI had such a duty, it is clear to us that this duty rested solely upon the claim that the parties consensually contracted for coverage through Hatcher's application and tender of the premium, the alleged acceptance by NCCI by binding the coverage pursuant to the Plan and Handbook, and the retention of the deposit premium. . . . . Hatcher's claim is simply one of non-performance of a promise. It is clear that there was no duty apart from the alleged contract to perform, and under the circumstances, Hatcher's claim for negligence must be dismissed.

The general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort.  See, e.g., Barber v. Business Products Center, Inc., 677 So.2d 223, 228 (Ala. 1996) (providing that "a mere failure to perform a contractual obligation is not a tort"); Sims v. Etowah County Bd. of Ed., 337 So.2d 1310, 1313 (Ala.1976) (same), over'd on other grounds, Ex parte Hale Cty. Bd. Educ., 2009 WL 30085 (Ala. Jan. 16, 2009).  However, Temploy did not plead a breach of contract claim in its complaint, thus the argument that it is a third-party beneficiary in unavailing.

11

However, even though the court rejects Temploy's third-party beneficiary argument because breach of contract was not plead, the court will consider whether there is a sufficient basis for Temploy to sustain a tort action against NCCI.  Specifically, "[e]ven when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable."  QORE, Inc. v. Bradford Bldg. Co., Inc., 2009 WL 1643346 (Ala. Jun. 12, 2009)  (citing Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So.2d 441, 446-447 (Ala. 2006)).

In this regard, Temploy claims in its Complaint that NCCI was negligent/wanton because NCCI failed to comply with the requirements of the AWCIP.  Temploy fails to expand on this claim in its responses other than to provide a list of duties that NCCI allegedly owes under the AWCIP and then noting that the duties include monitoring the service carriers and enforcing the performance standards for such carriers.  The court is left to surmise specifically how NCCI breached its monitoring and enforcement duties.  Presumably Temploy is relying on their contention that CPCI failed to properly and timely audit Temploy and failed to report the true circumstances surrounding the audit of Temploy.  Again, presumably, it is these activities that NCCI failed to properly monitor.

Assuming that Temploy could factually sustain its claim that NCCI negligently failed to properly monitor the auditing and reporting activities of Temploy, summary judgment is due to be granted because any negligent failure to monitor the audit and the reporting of the audit occurred more than two years prior to Temploy filing this lawsuit against NCCI.  Specifically, Temploy has failed to rebut or even address NCCI's evidence that both the alleged failure of CPCI to timely audit

Temploy and the alleged false reporting of the circumstances surrounding the audit occurred at the latest in 2005.   Accordingly, because this lawsuit was filed on October 29, 2008, Temploy's claim of negligent failure to properly monitor CPCI's reporting and auditing activities is time barred.  See, e.g., ALA. CODE § 6-2-38(l) (1975).

In an attempt to snatch its negligence claim from the jaws of the statute of limitations, Temploy attempts to expand the negligence claim to assert a claim that NCCI engaged in negligent conduct in December 2007, when NCCI sent a report to Scrimpsher and the Hardy Insurance Co. that stated that an uncollectable and non-compliant history was found for Temploy.[9]   Temploy summarily states that the act of sending the reports with the alleged incorrect information is "another act of negligence."  Temploy does not attempt to connect this act of negligence with the negligence alleged in the Complaint, *i.e.*, that NCCI "negligently failed to comply with the requirements of the AWCIP."   Rather, it appears that Temploy is asserting that NCCI negligently published false information.  This would be a claim of defamation which Temploy did not raise in the Complaint. New claims can not be raised in response to summary judgment. Al-Amin v. Donald, 165 Fed. Appx. 733, 740 (11th Cir. 2006) (concluding that a plaintiff may not amend the complaint through argument in a brief opposing summary judgment") (unpublished); Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (providing that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment[]").

---

[9]In their response, plaintiffs also attempt to expand the original negligence/wantonness claim to assert a claim on behalf of Hard Hitters.  Specifically, that NCCI engaged in negligent/wanton conduct in April 2007 and December 2007, when NCCI reported to Able and Associates that Hard Hitters had an uncollectible and non-compliant history.  For reasons explained *supra*, plaintiffs motion to amend the complaint to add Hard Hitters as a plaintiff in the negligence/wantonness claim, after the close of discovery, is untimely.  Moreover, this claim would be subsumed in Hard Hitters claim of defamation.

Temploy has also asserted a claim of wantonness. NCCI's statement, that the wantonness claim is subject to a two year statute of limitations, appears to be incorrect. Although the issue of what statute of limitations is applicable to an Alabama wantonness claim has seemingly led a double life, recently in <u>Carr v. International Refining & Mfg. Co.</u>, 2009 WL 129952, *7 (Ala. Jan. 16, 2009), the Alabama Supreme Court reaffirmed that the statute of limitations for wantonness claims is six years. Thus, the court will consider Temploy's claim of wantonness on the merits.

Wantonness is defined as "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others." <u>Ala</u>. <u>Code</u> § 6-11-20(b)(3) (1975). Wantonness involves the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." <u>Alfa Mut. Ins. Co. v. Roush</u>, 723 So.2d 1250, 1256 (Ala. 1998). Temploy has not adequately addressed its claim of wantonness; nor has Temploy pointed to any evidence from which a factfinder could infer wantonness on the part of NCCI. <u>See</u>, <u>e.g.</u>, <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) (holding that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment[] . . . [r]ather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned[]") (citations omitted). Accordingly summary judgment is due to be **GRANTED.**

### 2.    <u>Defamation</u>

In Count Three of the Complaint, Hard Hitters alleges that when it "applied with insurance agents" to obtain coverage through the assigned risk fund of the AWCIP, NCCI falsely reported

(with actual and/or common law malice) on several occasions to the insurance agents that Hard Hitters was "non-compliant with payment of premiums for workers compensation insurance that it was non-compliant in allowing audits required under workers' compensation policies and the AWCIP." (Doc. 1-2 at 10-11). Hard Hitters asserts in response to the motion for summary judgment, that on April 5, 2007, after NCCI received an application from Able & Associates Insurance for Workmen's Compensation coverage on behalf of Hard Hitters, NCCI sent a notice to an insurance agent at Able and Associates that coverage was being denied for Hard Hitters due to outstanding debt or non compliance history (Doc. 12-3); and that on December 7, 2007 a Residual Market Risk Profile was generated by NCCI showing that Hard Hitters had an uncollectible and noncompliance history and that the prior policy history showed that the business name was Temploy, Inc. (Doc. 12-4).

In order to establish a *prima facie* claim for defamation under Alabama law a plaintiff must allege: 1) a false/defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. See, e.g., Delta Health Group Inc. v. Stafford, 887 So.2d 887, 895-896 (Ala. 2004); Gary v. Crouch, 867 So.2d 310, 315 (Ala. 2003); Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988). Some statements are subject to a qualified or conditional privilege – that is, unless the statement was made with actual malice, the communicator of the statement cannot be held liable for defamation. See, e.g., Ex parte Blue Cross and Blue Shield of Alabama, 773 So.2d 475, 478-479 (Ala. 2000).

At the outset then, in order to establish a *prima facie* claim for defamation under Alabama

law, Hard Hitters must show a false/defamatory statement *concerning Hard Hitters*. Hard Hitters

has based the defamation claim on two documents, attached as exhibits A and B to Jessica Ulmer's

affidavit, that allegedly contain false information concerning Hard Hitters and were published.[10]

The first document is a letter sent by NCCI to an insurance agent in response to an inquiry from that

insurance agency regarding Hard Hitters. (Doc. 12-3). Specifically, this April 5, 2007 letter is from

Kathy Dowdy, underwriting analyst at NCCI, and is addressed to Shelley Nobles, an insurance agent

at Able & Associates, and states that Hard Hitters' application for workers' compensation coverage

was being rejected because "[e]ither outstanding debt or noncompliance history was found for the

applicant." Id. Attached to the letter is a letter dated April 2, 2007 which explains that NCCI found

an entity that *Ulmer* had managed/owned in the past (*Temploy*) and that *Temploy* has an outstanding

noncompliance issue with a prior carrier; and that CPCI advised NCCI that *Temploy* has not

complied. Id. There is also a handwritten note on the letter that states "she did comply with audit[]"

– meaning the *Temploy* audit. Id. Finally, attached to the allegedly defamatory letter of April 5,

2007, is an undated document from John Chambliss, of Able and Associates, which indicates that

the reason Hard Hitters was denied a quote was because it was determined that Temploy has an

outstanding noncompliance issue with a prior carrier. The court notes that Chambliss identifies Hard

Hitters as a client for whom the entity Able and Associates was attempting to place workers

compensation insurance.

　　　　While there is a factual dispute as to whether the reported information regarding Temploy

is correct, Hard Hitters can not rely on that factual dispute to avoid summary judgment. As

---

[10] In its response, Hard Hitters also cites to exhibit D and summarily states that "[a]nother Profile was issued the same day to a separate provider." A review of exhibit D fails to show any statements made about Hard Hitters, rather the report appears to relate solely to Temploy. (Doc. 12-5).

previously stated Hard Hitters claim of defamation must by supported by false information about Hard Hitters that was published to a third party.  As to the April 5, 2007 letter, Hard Hitters defamation claim fails in two respects.  First, when the April 5, 2007 letter is construed in conjunction with the April 2, 2007 letter, it would be unreasonable for a factfinder to infer that the non-compliant entity was Hard Hitters as opposed to Temploy.   This conclusion is bolstered by Chambliss explanation that Able and Associates understood that insurance could not be placed for Hard Hitters because of Temploy's outstanding non-compliance issue.  Hard Hitters cannot assert a viable defamation claim based on allegedly false statements about Temploy.  No defamation claim can lie where a plaintiff cannot show that the false statement was published concerning the plaintiff, because defamation is personal to the party defamed.  See, e.g., Larrimore v. Dubose, 827 So.2d 60, 61-62 (Ala. 2001) (providing that "[t]he general rule precludes a person from recovering for a defamatory statement made about another, even if the statement indirectly inflicts some injury upon the party seeking recovery[]").

Further, if the statements regarding Ulmer and/or Temploy could be construed to be defamation against Hard Hitters, the only "publication" was to Hard Hitters' insurance agents which does not constitute a publication as a matter of law.  In response to this statement of law Hard Hitters merely assert that "there is no proof of agency" between Hard Hitters and the Able & Associates insurance company (and its insurance agents).  However, according to the NCCI Basic Manual, a Producer is the insurance agent for purposes of the AWCIP Plan who is considered to be acting on behalf of the insured or employer applying under the Plan:

> A licensed insurance agent, broker, producer, or insurance representative, as defined in the state Insurance Code, whose privileges under this Plan have not been suspended or revoked; provided, however, that such producer shall, for purposes of this Plan, be considered to be acting on behalf of the insured or employer applying

under this Plan and not as an agent of the Plan Administrator or of any assigned carrier for Plan business.

(Doc. 12-7 at 2).   Thus, under the NCCI Basic Manual and for purposes of the AWCIP Plan, Able & Associates' insurance agents were acting on behalf of Hard Hitters when they applied to NCCI for coverage under the AWCIP Plan and invited any communications by NCCI concerning Hard Hitters' eligibility under the Plan.   Moreover, as previously noted, Able and Associates identifies Hard Hitters as their client.   Hard Hitters has failed to refute this evidence of agency.

Accordingly, even if the Court were to assume that a defamatory statement regarding Hard Hitters was made, it was not "published" under Alabama law.  See, e.g., Reece v. Finch, 562 So.2d 195, 198 (Ala. 1990) (providing that statements to one's agent which are both authorized and invited by the principal are not deemed to have been published and without publication there can be no defamation); Hayes v. Wal-Mart Stores, 953 F. Supp. 1334, 1339 (M.D. Ala. 1996) (finding that a plaintiff asserting a defamation claim must show "communication of the defamatory matter *to someone other than [himself]*[]").   Thus, these alleged defamatory statements are not actionable because there were not "published."

Next, the Court turns to the December 7, 2007 NCCI Residual Market Risk Profile prepared by NCCI for the insurance company Able & Associates (as Producer).  (Doc. 12-4).  This document is an NCCI generated document regarding Hard Hitters, listing Able & Associates as the Producer, which reveals NCCI's analysis of the application, noting past history as to Ulmer and/or Temploy. This NCCI Residual Market Risk Profile appears to be an internal document and Hard Hitters has produced no evidence that it was sent or produced or "published" to anyone outside of NCCI. Assuming it was sent to Able and Associates, for reasons explained *supra*, it would not be considered published under Alabama law.   Accordingly, summary judgment is due to be

18

**GRANTED** on Hard Hitters' claim of defamation.

**III.**   <u>**Conclusion**</u>

Based upon the foregoing, Defendant's motion for summary judgment (Doc. 5) is

**GRANTED**, Defendant's supplemental motion for summary judgment (Doc. 28) is **MOOT,** and

Plaintiffs' motion for leave to amend (Doc. 30) is **DENIED.**

**DONE** and **ORDERED** this the **12**th day of **August 2009.**

/s/ Kristi K. DuBose_____
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**